The Honourable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honourable Court. Could we be seated? The Court is in session. Okay, good morning to all and let's begin with the cases. Yes, Judge. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is No. 21-1137, United States v. Mario R. Rivera-Rodriguez. At this time, would counsel for the government please introduce himself on the record to begin? Before I begin, may I please reserve two minutes for rebuttal? You may. Good morning, Judge Helpe, and may it please the Court. David Bornstein on behalf of the United States. In this case, the district court granted compassionate release on COVID-19 grounds to a generally healthy 40-year defendant in his 40s who had served only 11 years in prison for a carjacking murder, in which he shot an old man to death simply to take his car for the day. Now, unbeknownst to the court, the prosecutor, and the defendant's own attorney, in the two and a half weeks leading up to his release, he had been fully vaccinated by the BOP against COVID. And when we tried to present this new information along with other new information to the district court, it denied us reconsideration on due diligence grounds, despite the fact that the defendant had waived that issue in one context and forfeited it in every other. Now, the United States is bringing this appeal so that this court may rectify three critical errors that occurred below, any one of which is sufficient for vacatur. But before I reach those errors, and unless any member of the panel would like me to begin elsewhere, I'd like to first address jurisdiction. The district court had jurisdiction to entertain our motion to reconsider under its inherent common law powers to reconsider its orders in a timely manner. That power was recognized by the U.S. Supreme Court in the United States against Healy and this court in the United States against Ortiz. Is it your position that the court can reconsider any sentence imposed? Your Honor, this is not a sentence. It is a sentence modification proceeding. So that is not our position. The defendant spends a large part of his response brief arguing that a sentence modification proceeding or compassionate release proceeding is a sentencing. But that argument is wrong under the U.S. Supreme Court's decision in Dillon against the United States or the U.S. Supreme Court construing 3582C2, the companion statute, to 3582C1A, the compassionate release statute, made it very clear that by the plaintext of 3582C2, a sentence modification proceeding is not a sentencing or a resentencing. And that is borne out by the way that Congress treats it in other respects. In 28 U.S.C. 994U, it says that a sentence mod that sorry, a modification. Sorry, Your Honor. What would you call it? A sentence modification proceeding. It's borne out by the Federal rules. If you look at Criminal Rule 43, for example, it distinguishes between a sentencing where the defendant must be present and a sentence modification proceeding where he need not be present. But moreover, Your Honor, this Court in 1993, in United States v. McAndrews, very clearly held that a sentence reduction is not a sentencing or a resentencing. It was for that reason that this Court held that Section 3742 does not govern appeals from sentence modification proceedings. Rather, 1291 does. So to be very clear, the Court's inherent power to reconsider its decisions has been recognized, and only positive law may narrow it. The defendant has pointed to 3582C as narrowing that, but he is wrong in saying that a sentence modification proceeding is a sentencing or a resentencing, and that is simply foreclosed both by Dillon and by Ortiz. Now, if I may move on, I also believe that the Court had power, of course, to reconsider its decision under 3582C1A itself, because the power to decide inherent within it is the power to reconsider. Let me ask you something. It seems to me from your arguments, there was definitely, is it like you're saying, this is like a fraud on the Court, and I know the defense counsel didn't know about this himself, but it's information that would have been crucial. The judge, of course, has discretion, knowing that he had been fully vaccinated, he could have made perhaps the same decision, but he didn't know, and this was crucial because in the ruling, it says, you know, there's people dying in that institution, he hasn't vaccinated, his health, et cetera, et cetera. Isn't there any doctrine like when there's a fraud on the Court that allows reopening of the... Now, the district court clearly had the discretion to reconsider its decision granting the defendant release. And Judge Hopey, your question actually leads me to the first error that occurred, which was a procedural error. It was a procedural error because the Court said that it would not look at our new information because we could have produced it with due diligence. Now, the defendant had... What's wrong with that? I mean, the information is under the control of the government. Are you saying that a phone call to BOP a day or two before the sentencing hearing, you could not have gotten an updated information about the defendant? No, Your Honor, we're not arguing that. Due diligence is a non-negligent standard. That's what the Court has said. To find that... So an exercise due diligence is simply to find the non-negligent. And the prosecutor in this case was not negligent for failing to call BOP a few days in advance on this case, which had nothing to distinguish it from the thousands of other pending compassionate release cases. And the defendant, I want to make clear, he was one of the first people in the United States to be vaccinated against COVID-19. I believe he was vaccinated like four days after the vaccine became available. Am I correct? Yes. He received the first shot five days after the vaccine became available on a Saturday. So, and there was no way to predict that he'd be one of the first people to receive it. The only reason why he received it, the only thing that distinguished him from anyone else, is that he was obese, like more than 40 percent of Americans are. And it simply blinks reality to say that a prosecutor, you know, given the thousands of cases, you know, nationwide that are out there, could have determined that someone who, like, over 40 percent of Americans is obese might be one of the first people to receive the vaccine. But it's not just that there was a court date coming up where the defendant was making the request. There was no court date, Your Honor. It's not just in a vacuum. It's preparation for an upcoming court appearance. I would like to make it clear. There were no court appearances here. There was no upcoming court appearance. All that there was was a compassionate release motion that was filed in October. Was there a date certain for the decision? No, there was not. No one could predict when this decision was going to come down. So, the motion's filed in October. The response is in— Give me the chronology. The motion is filed in October 2020. The government's response is filed in November 2020. A reply is filed in early December 2020. And then on December 19th, after briefing had ended, the defendant, five days after the vaccine became available, received the first vaccine. He received the second shot of it three days before he was released. And when he was released, you know, I should note that we filed a motion to stay. And the Federal Public Defender, who's represented him, you know, since his original conviction, we noted that vaccines had recently been delivered to the prison that he had been housed in. And the FPD said, well, that only shows that he might receive the vaccine. That was their response to it. And, indeed, when information about the vaccine came out, and this is crucial, the FPD waived the argument that there was any due diligence issue. First, on page 114 of the appendix, they conceded that it was new evidence warranting the court's attention. And then, again, on page 157 in the footnote, and it's worth reading to the court, this is their waiver. Sorry. Before you get there, what steps were taken by your office to determine the status subsequent to — well, subsequent to the motion being filed? The record does not say, Your Honor. The record does not say — so after the motion was filed, there was no vaccine. After our response was filed, you know, or at the time our response was filed, there was no vaccine. When the reply was filed, there was no vaccine. It was weeks later — When you filed your response, you noted that vaccines were becoming available, or would — wasn't that the — No, Your Honor. When we oppose a compassionate release motion, that was in November of 2020 before there was even an emergency authorization for a vaccine. When we noted that vaccines were being made available was in the days immediately following the defendant's release, where we filed the motion to stay his release. And we actually — no one knew that the defendant had been quickly released. But the point I'd like to make is the defendant waived the argument that we could have found this information through an exercise of due diligence when he said — it's page 158 and 159 of the appendix — he acknowledged that he could raise a due diligence argument, but he said he was not going to do so because he found it hyper-technical and he had to acknowledge that his own counsel did not realize he had been vaccinated. And under Wood v. Milliard, the Supreme Court case had his waiver. In that case, the Supreme Court said that when a party acknowledged it could raise an timeliness argument and said, however, we're not going to concede — we're not going to challenge timeliness, but we're not conceding it, the Supreme Court said that was a waiver of the argument. And it is an abuse of discretion of the party presentation principle in order for a court to decide that waived issue against the other party. MR. MILLIARD, I have not been able to reach any of the other claims of error, if I may, Your Honor. MS. MILLIARD, the remedy we're seeking is we believe — so if we went on any one of our three claims of error, the procedural error at reconsideration deciding that waived and forfeited issue, the substantive error, namely, that the conception of due diligence that the district court applied was unreasonable — Sotomayor, you're filibustering. Just answer the question. MR. MILLIARD, sorry, Your Honor. So if we win any of the three, we believe that the court should instruct the district court to deny the relief. And the reason for that is two things can happen on a remand. Now, if we win the 3553 argument, that's just reversal. Why shouldn't we just direct the district court to consider the motion in light of the fact that he's been vaccinated? Because if the district court were to once again grant relief on this record, it would be an abuse of discretion. And it would be a tremendous waste of resources. You could file an appeal then. Sorry, Your Honor? You could file an appeal then if you still believe that. And then in two years from now — Or the court might grant the relief that you're seeking and deny it. Why should we step in at this point? Because the record is clear. Now that the defendant is fully vaccinated, there is no grounds that he has for relief. So the district court — I was going to ask along those lines. If you look at the vaccination takeaway, the vaccination, let's assume — Sure. And the judge, aside from that, also noted he has no infractions in 10 years. He devoted over 800 hours of English as second language, 108-hour vocational program. He's worked at Unicorn, Positive Letters. He served like almost 60 percent of his sentence. In and of itself, would that be a sufficient, compelling, extraordinary circumstance for compassionate release, even if there was an error regarding the COVID matter? No, Your Honor. The Congress has been clear in 18 U.S.C. 984-T that rehabilitation alone does not constitute an extraordinarily compelling reason for compassionate release. And we pointed out — you know, it was a clear error by the court, an abuse of discretion, to weigh rehabilitation so heavily. Since we pointed out that the coursework that he did was simply one course in mid-2012, one course in mid-2015, and a smattering of other courses across the other 11 years, we pointed out that it's not unusual for a defendant in prison to have a clean disciplinary record. Indeed, that is what is expected and occurs with most inmates. And third, we also — Considering that below. There was no in-person hearing, Your Honor. We made it perfectly clear — In your brief. Yes, Your Honor. We made it perfectly clear at the beginning and end of our opposition to the compassionate release motion that we believe that the record before the court did not support releasing him under the 3553a factors. And under Holgan-Hernandez, once we made it clear what our position was, that was sufficient to preserve a claim of substantive reasonableness. And this Court, in applying Holgan-Hernandez, has permitted parties — I would cite the Court, for example, as we did in our brief, the United States v. Gerardo Nazario, where the Court said that because the defendant asked for a 180-month sentence but received a 300-month sentence, his substantive reasonableness claim was preserved. And then the Court went on to view as preserved the defendant's argument that he deserved a lesser sentence for fact-specific reasons. His service in the military, his post-traumatic stress disorder, his traumatic childhood, the fact that the sentencing guidelines were too harsh. And the Court viewed under that — his preservation under Holgan-Hernandez as covering all of those claims. Okay. Now — Thank you, counsel. Your time's up. You're going to have two minutes for rebuttal, so let's hear then from counsel for — Thank you, Your Honor. — the appellate in this case. At this time, would Attorney Carrion please introduce himself on the record to begin? Good morning, Your Honors. This is — may it please the Court, my name is Samuel Carrion, and I represent the appellee Mario Rivera-Rodriguez. Your Honors, this case is not about a district court's abuse of discretion. This case is about a district court's proper, congressionally-conferred use of discretion to determine not only that extraordinary and compelling circumstances existed to grant compassionate release, but that the man before the court below, Mr. Rivera, warranted such compassion. This case is also about finality. This case deals with the government's — with the district court applying an appropriate legal standard to a government motion for an extraordinary remedy. The remedy of reconsideration — Counselor, if you — if you take out the vaccinations and your brother counsel is correct that rehabilitation alone is not to factor into that, what is left that constitutes extraordinary and compelling? Well, Your Honor, it would be my position first that the proper challenge here, the government counsel has put forth a challenge to the weighing of the 3553A factors, so that essentially there's a concession that there was extraordinary and compelling circumstance. But even addressing your question, the court was very well aware that there was a vaccine rollout. As of mid-2020, he was aware also that inmates at Butner Complex, which was a medical facility, would have been prioritized. That was, in fact, in the record. That's why Mr. Rivera was there. He was a stable but chronic level of medical care. And so it was at least foreseeable that he would have been vaccinated. So — and as it was pointed out after the judgment in the opposition to reconsideration, the efficacy of the vaccine at that point, January 2021, was very much unknown. So for the court to have — even if he had been — even if the court had known he was vaccinated on this record, it's very hard to conclude that that would have somehow negated the extraordinary, compelling circumstances. And of course, with the benefit of hindsight, Your Honor, we know that there have been they have been vaccinated from COVID. So I would add that there's also, just to my last point about what this case is about, there are limits to the government's ability to appeal. And that's very much cabined by Congress's statutory limitations to government appeal. And that's because the Supreme Court has said government appeals are disfavored. And so there is an interest here in an individual, in this case Mr. Rivera, who has been out almost two years in the free community with no issues, to finality, finality in litigation. And the government in its presentation characterizes Mr. Rivera as being in generally good health. And I would respectfully submit that the record refutes that. Let me ask Counsel Judge Garcia-Gregory below, in the denial of the reconsideration, he does make the statement that there was lack of due diligence by the government. But he says, alternatively, that he would still release Mr. Rivera-Rodriguez because even knowing there's vaccine based on the same factors, he's still obese, there's still a risk in there. Would that alternative ruling in and of itself be sufficient for this court to affirm the judgment below? Yes, Your Honor, I do think that would be the case. And I think that on this record, certainly, the district court was aware. It was aware that there was a potential for vaccination. And as it relates to due diligence, I think it's noteworthy to look at what the government did. On January 8th, when Mr. Rivera was granted compassionate release, it filed a motion to stay his release. In that motion, it proffered that it had information that Butner, the institution where Mr. Rivera was detained, had received vaccinations. And so it was almost imminent that he would have received the vaccination. Three days later, in its first motion to reconsider, which was later withdrawn for jurisdictional issues, again, the government says, proffers a printout, a printout of Mr. Rivera's vaccination record, dated January 11th, the very same day. So the district court could have reasonably inferred in that three-day interlude that the government was able to pick up a phone or email BOP counsel, who's at the And to Judge Helpe's point as to fraud on the court, I think it's very difficult to surmise that someone who has been in prison under strict quarantine measures during the COVID pandemic could have easily communicated with his lawyer that he had been vaccinated, given that it had happened December 19th and then again January 5th. And as soon as he meets with his lawyer at the Office of the Federal Public Defender in early January after he's released, he tells his counsel, yes, I have received the vaccination. But, again, I don't think it's an abuse of discretion for the district court to hold the government as the custodian of these records to the – to a normative standard, as the government points out, of picking up a phone and making a phone call. There's also other arguments that are in the government's motion to reconsider that are couched as manifest error. But what they really are is trying to dress up arguments that could have been presented earlier. For example, they talk about the BOP inmate that's being seven as opposed to nine. And the original nine number was – was set forth in the – at the website of the BOP at the time. They counted two extra inmate that's – that were at a satellite camp. Either way, what they proffer is a – is a physician's – a BOP physician's affidavit in a – in a collateral civil suit with other inmates that was dated December 14th, 2020. Again, weeks before the – the district court ultimate release – ultimately released Mr. Rivera. And then they say, well, Mr. – Mr. Rivera's medical conditions were under control. He's – he's prediabetic. He's not diabetic. He's got hypertension. So that only might possibly increase his COVID complication – complications. He's obese. Putting aside how one's obesity could be under control, these were all things that were in at least the – the medical records that were provided, which were five years of BOP medical records appended to the motion for compassionate release. And there was also a opposition – an opposition from probation, which was filed on December 4th, almost a month – more than a month before Mr. Rivera's release. In that opposition – this is in the – the sealed appendix. The probation officer says he's a – he's an inmate – Mr. Rivera's an inmate at – at chronic care and that his conditions are under control. His – and so there's no reason why the government couldn't have put that before the court earlier. Also, I'd like to just point out that that's a discrete issue. Being – having conditions – pre-existing conditions under control by no means means that you – one is not at increased risk for COVID complications. And so I think that conflating the two is not understanding the big picture. Let me ask you, counsel, from a – from a broad perspective from the Federal Defender's Office, and going back to when I was handling as a district judge these compassionate release motions, my best estimate is that a very small number, at least in the District of Puerto Rico, were actually granted. So this is – this is not like – you know, this is a unique case in and of itself. It's not like in your office you have 40, 50 cases just like this that were granted. This is – basically, it's a unique case. Am I correct? It's a unique case, but it's a case that – that the district court was uniquely in a position to – to weigh. And I think what the – what the government really has issue with is – No, but what I mean is it's unique because this is not like a judge who in 50, 60 cases granted a said remedy. I would assume maybe one or two cases. But, again, I did have at some point the statistics about compassionate release motions, and most of them were being denied. I know your office was able to get some compassionate release dealing directly with the DOP also, but it was – compassionate release because of COVID was not the norm. Am I correct? There were cases, you know, here and there, but it wasn't like every day they were getting granted, granted, granted by everybody. Correct? It's my understanding generally that compassionate release is a – obviously, congressionally conferred, but – but, yes, it is an extraordinary exception to finality, but so is reconsideration. And that's – yes. Could you just answer Judge Helper's question? The question is – and let me backtrack a little. I'm aware. I happen to be chief judge. A lot of the motions that were granted were agreements between the U.S. attorneys and your office. Those were normally granted, but when there was disagreement, the percentage of motions that were actually granted of compassionate was very low. So this is one of those few exceptions that were granted within the litigation of these motions. Am I correct? To my knowledge, that would be yes, that predates my involvement with FPD. But, yes, I do think this is a rare circumstance, but by no means was the district court abusing the situation. Yes, I'm not going into that. I'm just saying on the global picture, it was, you know, a case that was actually litigated, and in this case, the defendant, you know, prevailed. Yes, Your Honor. And with the Court's indulgence, I would very briefly like to – I'd like to talk about the party presentation principle. I know the – One minute. Government – No, 32. 32. Government counsel mentions the Milliard case and about waiver. First of all, I would – I would contest the fact that this was waived. Government trial counsel for Mr. Rivera mentioned the applicable legal standard. He cited Allen, which is the same case that appears in the district court's order denying reconsideration. The government, in fact, cited Allen as well with the same pin site, so it was at least on notice. Then, as it relates to the other two arguments with the BOP deaths and the medical conditions, Mr. – if I may finish. You have one minute. Okay. If Mr. – Mr. Rivera's trial counsel does say unequivocally these arguments could have been presented earlier, and that's in his – that's in his opposition to reconsideration. And – and as it relates to the – to the footnote where he mentions that he's not going to make a hyper-technical argument, he's – that was in a footnote, and he still cites the applicable standard. The government had an opportunity to reply, and they simply did not address – they did not address due diligence at all, nor did they proffer any reasoning behind why it took them so long to find this information out or why they couldn't have put this before the court at an earlier time. And I think that is what essentially dooms the government's argument that the district court abused its discretion here. Before you wrap things up, could you just help me appreciate just procedurally how these were done? I mean, there was a motion filed by your office on behalf of a defendant, right? Yes. And then was there – was there a schedule issued by the court as to when briefing had to be completed? I'm trying to figure out how that worked. Well, there was no schedule. But what I do know is that there was a compassionate release motion filed, and then there were – there were actually – I'm sorry, I believe there were deadlines in place, and I know that trial counsel filed – filed some type of filing asking the court to instruct both the government and probation to comply with an order to file – to make its filing. And on November 24th, this was about a month after Mr. Rivera filed for the motion, the government filed its opposition, and then I believe around December 4th is when probation filed the – its filing in opposition to compassionate release. So when probation filed its opposition, would the case – is that what would trigger the case being completely teed up for a decision by the court? Yes, Your Honor. With – I would add the caveat that if the government saw something in that motion that it would have liked to address, that perhaps it could have filed a – some type of supplemental filing after that, but – but it didn't. And so it – basically, the motion was under consideration until January 8th when Mr. Rivera was granted compassionate release. And that was all done on the paper, though? All done on the papers, Your Honor. And if I may just briefly conclude. So with the benefit of hindsight, we know that the district court's decision granting Mr. Rivera compassionate release was eminently reasonable in light of breakthrough infections and waning efficacy of the vaccine – of the COVID vaccine. But it was similarly reasonable in January of 2021 when the lethality of the coronavirus at FCC Butner and other prisons was undeniable. Mr. Rivera's risk of serious complications from contracting COVID due to his preexisting conditions was also heightened and where the positive equities of what he had done during his 11 years of incarceration as it relates to his contrition and as it relates to his coursework and his work and his general rehabilitation, which was properly considered by the district court, renders that decision proper. I'd also ask the court to affirm the judgment of the district court granting compassionate relief to provide some much-needed closure and finality to this saga, which has now been going on for close to two years. I'd ask the court to please allow Mr. Rivera to continue his almost two-year journey of redemption and reintegration to society. Thank you. Thank you, counsel. At this time, would counsel for the government please reintroduce himself on the record for his two-minute rebuttal? Yes, good morning again. David Bornstein on behalf of the government. And before you start with your two minutes, let me ask the question so you can put it in, have your answer. I asked the defendant's counsel, Judge Garcia issued the order on reconsideration. And he says, even assuming you're right, he could have, it was, there was due diligence or that's not an issue. But he then says, alternatively, notwithstanding that, I would still release this person based on the COVID issue, even though he's been vaccinated, duly vaccinated, and with all the other factors. So doesn't, this is my first question, doesn't that reconsideration basically do it for this case? And the second question, to the extent you can answer, and I asked Mr. Carrion as well, is I believe this is probably the first compassionate release appeal I've seen of the United States. There have not been too many compassionate release motions that were in fact granted unless stipulated by the parties. So again, this is, again, this is not, from your perspective, not a pattern that's been going on in the district court. It's this particular case. So those are my two questions, and your two minutes are, you can start. Yes, Judge Hoppe, first, you are wrong about the reconsideration order. It is page 10 of the addendum. Judge Garcia-Gregory never says that were I to reconsider, or were I to consider the information in the motion to reconsider, I would still grant compassionate release. What you're doing, or I think the information you have is from page 73 of the Appellee's brief, where they speculate that this Court should simply assume that even though Judge Garcia said he would not look at the evidence, had he looked at the evidence, he would have still affirmed. But Garcia-Gregory did not say that. That is simply the appellee asking you to speculate to that. Second, there have been several government appeals of compassionate release motions across the country. There's been one other that I know of in this circuit. It was United States against Alfred Trankler. Two members of this panel sat on the case. The appeal was accepted. The merits were considered, and it was vacated and remanded. We believe that's an implicit recognition that there is jurisdiction to hear these appeals. We are unaware of any case in which a court of appeals has refused jurisdiction. Refusing jurisdiction would be very odd, because it would then turn compassionate release into an unreviewable option for district courts to reduce sentences. And I would simply ask the Court to find it has jurisdiction under 3731 and 1291, like the Tenth Circuit, for example, explicitly did in United States against Mau Mau. That was in one of our 28 J letters. Next, Your Honor. The appellee claims that we have conceded extraordinary and compelling circumstances. That is only true pre-vaccination. Once the defendant is vaccinated, there are no extraordinary and compelling circumstances, which is why we believe it'd be an abuse of discretion for the district court to release him again on remand, which is why we're asking the court to instruct the district court to deny relief. If on the off chance it appears from the defendant's filings he wants to bring forth a lot of new information about what he claimed are a lot of new health conditions, we believe it'd be inappropriate for the district court to consider them at that time, because 3582C1A still has an administrative exhaustion requirement. Those new claims need to be exhausted. If I may... Let me ask you something. If we were to reverse the court, that doesn't impede Mr. Rivera-Rodriguez from filing another compassionate release motion. To file another compassionate release motion, though, he would need to exhaust those claims before the BOP. The 30-day requirement, yeah. Yes. So that would require him to, I believe, Your Honor, be re-incarcerated for that, so he then may petition the BOP to grant him a reduction in sentence. I am unaware of any vehicle in which someone who is not incarcerated may file a request for administrative relief for an inmate. Would he be eligible for bail? In order to be eligible for bail, he'd have to meet those requirements. We believe, again, that based on the record, he cannot. Let me make it very clear. If this compassionate release were to be affirmed, the court would effectively be saying that even murderers who spend only 11 years in prison, if they are obese, even though they're fully vaccinated, a district court does not abuse its discretion if it grants them compassionate release. That simply cannot be correct. Let me ask you a question about that. Judge Thompson, did you finish? Yes. Thank you. What's the time period in which you had to file a motion to reconsider? Is there one in these circumstances? Yes, there is. The time period is usually the time to appeal the order that's being reconsidered, which under Rule 4a)(b)(1), is 30 days for the government. So let's change the facts a little. The compassionate release is ordered. There has been, in fact, hypothetically, no vaccination at that point. And 28 days later, the first dose is given. Government finds out about it. If the government sought reconsideration at that point, how do you think things would look then? I think that would be a very different case, Your Honor. The point here is that the defendant was fully vaccinated at the time of the court's decision, and there was no telling, Judge Thompson, when that decision was going to be – was going to come down. There was nothing in the docket saying the court was going to decide. So what if he had the first dose prior to the decision and the second dose within the 30 days? How much does that change it? These are case-specific things, Your Honor. So what I'm actually getting at is I'm trying to – trying to understand how much of this appeal is based on the fact that the – that the individual was not forthcoming with the court about his vaccination status, or is that irrelevant? No. We – we do believe that it is a relevant factor to bring into consideration the fact that the defendant, despite sitting in the FPD's office during that very busy January 11th, said nothing about his vaccination until it was brought forward by the government. This case is truly unique in that the defendant was one of the first people to be vaccinated, and again, there was nothing out of the thousands of cases that were pending to highlight this one. Now, after the fact, once the defendant was released, this became a priority case. So, yes, someone serving only 11 years for a murder, we could pick up the phone. But how do you – how do you respond to your brother's point, though, that it was unknown what the result of the vaccination would be, for the same reason, that this is one of the very first ones? The defendant conceded that he would be 95 percent immune. His only claims were that he had not – you know, he had been vaccinated so recently – and this is in response to our motion to reconsider. Yeah. Yeah. He had been vaccinated so recently, he had not been able to gain full immunity, and he said that there was no plan in place for booster shots yet. So he was concerned that his immunity would wane and he wouldn't be able to get another vaccination. But his position before the district court was, I'm now 95 percent immune, but that is not enough, since he thought only with 100 percent immunity could he – could the court reconsider its decision. We would ask the court to reverse the district court. There were procedural errors here that I want to say have gone uncontested. It's nowhere in the defendant's brief where they ever tried to contest that the district court violated the party presentation principle by deciding that waived and forfeited issue. I think there is simply very clear that when it came to the substantive conception of due diligence that the district court applied, the attorney here was not negligent for failing to predict that this individual, who is simply obese – he had hypertension, but that was not, according to the CDC, something that would increase his risk of COVID-19. And he only had prediabetes, which also does not increase your risk of severe illness from COVID-19. You know, it's hard – the reason I keep asking about procedure is because it's hard for me to conceptually understand the due diligence notion when there's so much confusion about what the procedure is before the district court and when things were going to happen. So it's like, when are you put on notice that you should be doing something in preparation for the case? This is the difficulty of a proceeding that occurs on the papers where there's no in-person hearing that's ever going to be held. Or it could have been remote at that time. But it could have been remote, but I know of no compassionate release proceedings that have been held. I believe, if I'm not mistaken, probably all compassionate release hearings in the District of Puerto Rico were held on paper. I don't think there were nobody out – again, I don't – you didn't ask for – your government didn't ask for a hearing. No one asked for a hearing. Nor did the defense or anybody. Everybody – these were all being submitted on paper. They're held on paper. And, you know, I think the experience goes to show that parties simply do not know when these motions will be decided. Sometimes they're decided immediately. Sometimes they're decided months later. If they're held on paper and everybody's happy with them being held on paper, nobody's requesting a hearing, they're like built-in complications to what could happen in a procedure that everybody agrees is the appropriate procedure. And so it's like, how can the district court then be said to abuse the discretion if everybody is in agreement that this is what's going to be submitted to the court for its consideration? Which gives rise to, well, whose burden is it to advise the district court of any change in circumstances? And so with – I'm sorry, let me just finish and then you can respond. And so then with the defendant has knowledge that he's been vaccinated, the government, in theory, since you're in possession of the paperwork, has knowledge. So then wouldn't it be the disgruntled person, i.e., the government or who's opposing the release, why wouldn't it be your burden to come forward, even though I know it's the defendant's burden to make the initial showing? I'm just trying to figure out how we're supposed to think this through. Sure. Yes, Your Honor. If I could just quickly make clear, there are two decisions that are being appealed. There's the original compassionate release and there's a reconsideration decision. When it comes to the original compassionate release, of course, the vaccination is not at play there. Our argument is simply – so it's aside from that and I won't go into it. Our argument on reconsideration is that, yes, of course we bear the burden of bringing forward new evidence if we want reconsideration. And we did so. And we did so in a timely manner. And we showed due diligence simply through the dates of when the vaccination occurred, when we informed the court of it, when we learned of it, when we informed the court of it. And also, I'd also like to highlight that there were many other facts we brought forward. The defendant's release plan turned out to be false. He said that he's going to move in with his wife on the mainland. He returned to Puerto Rico to a community with 26 times the COVID infection rate as his prison. The defendant, when he was released, told his probation officer who thought, okay, this person's been released for medical reasons, that he was in no rush to get healthcare since all of his conditions were under control and he had no recent health issues. These were facts that we brought to the court's attention and we simply don't know how we could have predicted beforehand what the defendant was going to admit once he was released. Those were things that no amount of research or prescience could have brought forward to the court prior to the release. So we did bear the burden, but the district court abused its discretion here because, first of all, it decided due diligence after the defendant himself said, we're not going to argue due diligence here because that's hyper-technical and honestly, my own attorney didn't know about it. So that was waived and also- If we disagree with you on that point, then what? If we don't think that he waived a due diligence argument, then what? Then we go to the substantive conception of due diligence that the court applied. And essentially, the district court would have to say that the prosecutor was A, not predicting what the defendant would say post-release, which I just don't see how that's possible, and B, for not predicting or calling the BOP on, and since nothing distinguished this case from other cases, again, the defendant was simply obese, from not calling the BOP within two-and-a-half weeks of the first or three weeks of the first dose of the vaccine going out, of calling the BOP on each of the And again, there were thousands of cases pending at the time. Now, it is true that once the defendant was released, we were able to pick up a phone, because this was a priority matter, and say someone was just released for murdering someone after 11 years based on their obesity. And, you know, two other factors that do not increase one's risk of COVID-19 severe illness. You know, please send us the records. And once we got the records, we saw that the defendant had been vaccinated in the two-and-a-half weeks preceding his release. His release, Your Honor, was January 8th, 2021, and I want to emphasize, the first shot of the COVID vaccine was on December 14th. And I think we can all remember back to that time how, you know, everyone knew that it would be many, many months before the vaccine would be made available to them. And the only reason that this individual had for getting any further in line was he was obese, like over 40% of Americans. The prosecutor was not negligent for failing to call the BOP on this particular case in that short two-and-a-half week window before he was released. Thank you, counsel. That concludes argument in this case. Okay. Mr. Carrion wants to have two minutes to respond to anything. Please go ahead. Since counsel was given almost 10 more minutes, so. Yes, Your Honor, and thank you. I guess I saw a rebuttal. Thank you again, Samuel Carrion, on behalf of the appellee, Mario Rivera-Rodriguez. Your Honor, I just wanted to address as to the issue of the release plan that Brother Counsel brought up. It's normative in situations in dealing with someone who's released from prison to be released to the district of their conviction. And absent some movement while somebody's inside who's expecting to be released, there is an administrative process to change one's district of release. So to say that. I'm a lot more interested in that timeline and who should have come forward with what information. Well, just briefly looking at the record, there were deadlines put in place by the government. It missed the deadline. I believe it was November 18th where it was supposed to file its first response to the motion for compassionate release. It ultimately filed it on November 24th. And then it took some prompting to get the probation department to file their response in opposition, but they ultimately did on December 4th. So we have a period of about a month where the court did not rule, where there were vaccinations would be prioritized at certain institutions that had medical centers adjacent to those institutions, FCC, Butner being one of them. And then there was also the fact that, let's not forget, there were inmate deaths at Butner. Whether they were nine, whether they were seven, it was obviously still a concern for the district court. And again, with the benefit of hindsight, we know that inmates have died even after being vaccinated and even after having their compassionate release motions denied for being vaccinated. So I think that that's important to note. And again, whether or not his evidence, the statements from an unnamed probation officer that his conditions were under control, that was in the record. That was in probation's opposition to compassionate release. But being under control is certainly not being at risk. And I think that's the key distinction. And so I'd like the court to just, if the court could just home in on that, because he still had hypertension, which possibly, according to the CDC, possibly increased his risk to complication of COVID. He was obese, and he did have, at least dating back to May of 2020, a diagnosis of possible diabetes in one record and then also prediabetes in another. And all of this information was before the district court, and certainly the government was privy to it prior to its judgment. I understood, Brother Counsel, to be suggesting that you were suggesting to us that there was an alternative basis for the denial of reconsideration that was put forth by the judge beyond lack of due diligence. How do you respond to that? I thought that's what you were saying as well. No, Judge Howard. It's, reading the order, it's clear to me that the judge denied it, applying the reconsideration standard solely based on the lack of due diligence and also in regard to the arguments that could have been presented, which is essentially similar or the same. They could have been presented before the final judgment. But given this record, I do agree with the government in the sense that I do think the court should be allowed to, the district court should be allowed to weigh the 3553 factors again in light of this information if the court were to remand the case. Yeah, I got it. But, yes. Okay. Thank you, Counsel. Thank you. Thanks both, Counsel. Let's call the next case. Thank you. That concludes argument in this case.